UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
            *Plaintiff*,        )        Docket No.
                               )        7:20-cr-00167-1-M
  v.                           )
                               )
LIAM MONTGOMERY COLLINS,       )
                               )
            *Defendant*.        )

(PURSUANT TO STANDING ORDER 22-SO-1, PORTIONS OF ALL
GUILTY PLEA AND SENTENCING TRANSCRIPTS ARE RESTRICTED)

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

THURSDAY, JULY 25, 2024
PUBLIC TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE RICHARD E. MYERS II
UNITED STATES CHIEF DISTRICT JUDGE

APPEARANCES:

On Behalf of the Government:

    Barbara D. Kocher, Esquire
    U.S. Attorney's Office
    150 Fayetteville Street, Suite 2100
    Raleigh, North Carolina 27601
    (919) 856-4530 | barb.kocher@usdoj.gov

On Behalf of the Defendant:

    Elliot S. Abrams, Esquire
    Cheshire Parker Schneider, PLLC
    P.O. Box 1029, 133 Fayetteville Street, 4th Floor
    Raleigh, North Carolina 27602
    (919) 833-3114 | elliot.abrams@cheshirepark.com

JENNIFER C. CARROLL, RMR, CRR, CRC
Official Court Reporter
United States District Court
Wilmington, North Carolina
Stenotype with computer-aided transcription

<u>Thursday, July 25, 2024, at 10:00 a.m.</u>

2                      **P R O C E E D I N G S**

10:00:36    3          THE COURT:  All right.  If the clerk will

10:00:38    4   please call the case.

10:00:39    5          THE CLERK:  *United States of America versus*

10:00:42    6   *Liam Montgomery Collins*.

10:00:44    7          THE COURT:  Counsel, please state your

10:00:46    8   appearance for the record.

10:00:46    9          MS. KOCHER:  Barbara Kocher, Your Honor, for

10:00:47   10   the Government.

10:00:48   11          MR. ABRAMS:  And Elliot Abrams on behalf of

10:00:50   12   Mr. Collins, Your Honor.

10:00:52   13          THE COURT:  Good morning, Mr. Collins.  If

10:00:55   14   you would please stand so the clerk can administer the

10:00:55   15   oath.

10:00:55   16          THE CLERK:  Please place your left hand the

10:00:55   17   Bible, raise your right hand, and state your full name

10:01:00   18   for the record.

10:01:00   19          THE DEFENDANT:  Liam Jan Montgomery Collins.

10:01:06   20          (The defendant is administered the oath.)

10:01:09   21          THE COURT:  Mr. Collins, have you taken any

10:01:10   22   substance in the last 48 hours that would affect your

10:01:13   23   ability to hear and understand these proceedings today?

10:01:16   24          THE DEFENDANT:  No, Your Honor.

10:01:17   25          THE COURT:  You understand what's happening

| | | |
|---|---|---|
| 10:01:18 | 1 | here today? |
| 10:01:19 | 2 | THE DEFENDANT:  Yes, Your Honor. |
| 10:01:20 | 3 | THE COURT:  Mr. Abrams, do you have any |
| 10:01:21 | 4 | doubt about your client's competence to proceed today? |
| 10:01:24 | 5 | MR. ABRAMS:  No, Your Honor. |
| 10:01:24 | 6 | THE COURT:  Ms. Kocher, does the United |
| 10:01:26 | 7 | States have any such doubt? |
| 10:01:27 | 8 | MS. KOCHER:  It does not, Your Honor. |
| 10:01:28 | 9 | THE COURT:  Based on this Court's questions |
| 10:01:29 | 10 | and the defendant's and counsel's answers, this Court |
| 10:01:32 | 11 | finds that the defendant is competent to be sentenced |
| 10:01:34 | 12 | today. |
| 10:01:36 | 13 | Mr. Collins, in light of some cases from the |
| 10:01:38 | 14 | Supreme Court of the United States, beginning with |
| 10:01:41 | 15 | *Booker*, the sentencing guidelines are no longer |
| 10:01:44 | 16 | mandatory; they are advisory.  Nevertheless, in |
| 10:01:47 | 17 | accordance with those Supreme Court cases, as well as a |
| 10:01:50 | 18 | number of decisions from the Fourth Circuit Court of |
| 10:01:53 | 19 | Appeals that interpret those cases, this Court still |
| 10:01:56 | 20 | must take into account the now-advisory guidelines.  The |
| 10:01:59 | 21 | Court does this by initially ruling on any objections |
| 10:02:02 | 22 | and making findings of fact.  Next, the Court will |
| 10:02:06 | 23 | calculate an advisory guidelines range.  The Court then |
| 10:02:10 | 24 | will consider any motion that might move the range |
| 10:02:12 | 25 | either up or down.  Next, the Court will consider all |

10:02:15  1  arguments that your lawyer makes concerning your

10:02:17  2  sentence both in Court and in any motion or memorandum,

10:02:21  3  any statement you would like to make concerning your

10:02:23  4  sentence, and the arguments of the assistant United

10:02:27  5  States attorney both in court and in any motion or

10:02:29  6  memorandum.  I'll then give your attorney an opportunity

10:02:32  7  to respond.  And then finally, after my own discussion

10:02:35  8  of the arguments presented in consideration of the

10:02:37  9  sentencing factors, I'll announce your sentence in open

10:02:40  10  court.  That's the process we follow.

10:02:42  11          Mr. Abrams, did you receive a copy of the

10:02:43  12  defendant's presentence report?

10:02:45  13          MR. ABRAMS:  Yes, Your Honor.

10:02:46  14          THE COURT:  Mr. Collins, have you discussed

10:02:47  15  your presentence report with your attorney?

10:02:49  16          THE DEFENDANT:  Yes, Your Honor.

10:02:50  17          THE COURT:  Do you have any objections to

10:02:52  18  the report that were not raised by your attorney?

10:02:57  19          THE DEFENDANT:  No, Your Honor.

10:02:57  20          THE COURT:  Mr. Abrams, does your client

10:02:58  21  object to the proposed conditions of supervised release

10:03:01  22  as set forth in the presentence report?

10:03:03  23          MR. ABRAMS:  No, Your Honor.

10:03:04  24          THE COURT:  Ms. Kocher, does the United

10:03:07  25  States have any such objection?

| | | |
|---|---|---|
| 10:03:08 | 1 | MS. KOCHER: It does not, Your Honor. |
| 10:03:09 | 2 | THE COURT: All right. Y'all may have a |
| 10:03:11 | 3 | seat. |
| 10:03:11 | 4 | The presentence report shall be placed in |
| 10:03:13 | 5 | the record under seal in accordance with Rule 32 of the |
| 10:03:18 | 6 | Federal Rules of Criminal Procedure. The Court accepts |
| 10:03:20 | 7 | as accurate the presentence report except as to matters |
| 10:03:22 | 8 | as set forth in the addendum. And the Court notes the |
| 10:03:29 | 9 | addendum contains no objections from the United States, |
| 10:03:33 | 10 | three objections from the defendant, and a statement |
| 10:03:36 | 11 | from the probation officer that preserves a right of |
| 10:03:39 | 12 | objection by the defendant. |
| 10:03:41 | 13 | Now, I note that this is an 11(c)(1)c plea, |
| 10:03:45 | 14 | so the objections won't have an effect on the outcome. |
| 10:03:50 | 15 | I understand they're important to your client, so I'm |
| 10:03:53 | 16 | happy to hear from you. But I'm noting at the outset |
| 10:03:56 | 17 | that it does. And I also note that the Chapter 3 |
| 10:04:01 | 18 | enhancement for terrorism is stipulated to. |
| 10:04:04 | 19 | So I'll hear -- I'll hear from you, |
| 10:04:06 | 20 | Mr. Abrams. |
| 10:04:07 | 21 | MR. ABRAMS: Thank you, Your Honor. |
| 10:04:12 | 22 | Your Honor, we come to the Court after much |
| 10:04:15 | 23 | productive and hard work with a really diligent |
| 10:04:19 | 24 | prosecutor and prosecution team. And as Your Honor |
| 10:04:23 | 25 | noted, we have a (c)(1)c plea that we have proposed, and |

| | |
|---|---|
| 10:04:28 | 1 |
| 10:04:31 | 2 |
| 10:04:35 | 3 |
| 10:04:41 | 4 |
| 10:04:43 | 5 |
| 10:04:48 | 6 |
| 10:04:50 | 7 |
| 10:04:56 | 8 |
| 10:04:58 | 9 |
| 10:05:01 | 10 |
| 10:05:05 | 11 |
| 10:05:10 | 12 |
| 10:05:17 | 13 |
| 10:05:21 | 14 |
| 10:05:25 | 15 |
| 10:05:29 | 16 |
| 10:05:37 | 17 |
| 10:05:42 | 18 |
| 10:05:48 | 19 |
| 10:05:52 | 20 |
| 10:05:57 | 21 |
| 10:06:01 | 22 |
| 10:06:07 | 23 |
| 10:06:11 | 24 |
| 10:06:14 | 25 |

we ask Your Honor to accept that plea.  We think we've proposed for Your Honor's consideration a result that achieves all of the relevant sentencing factors.  And so I want to frame our objections and tell you why we're pushing them.  And that is that when the Bureau of Prisons receives Mr. Collins into their custody, they'll do a security review of him.  And on the worksheet that they will do, there are certain things that they will look at to decide where he goes and what programs are available to him.  And so the purpose of our objections is to hopefully place Mr. Collins into the best situation he can be for his hopeful successful release.

And so our concern about the presentence report -- that's the big picture.  And there are -- really, the most important of the objections with respect to that is the -- our objection to the actual Chapter 3 enhancement as opposed to using the application note to upwardly depart.  In the plea itself, Your Honor -- I think it's the second-to-last page is where our stipulation to that enhancement -- or, excuse me, upward departure resides.  It's page 6 of the plea agreement.  And we stand by this stipulation 100 percent, and that is that the sentence of ten years of confinement resulting from the application of an upward departure pursuant to 3A1.4, note 4 is what's

10:06:20  1   appropriate.  That particular note says that if there

10:06:28  2   was -- if the preponderance of the evidence supports

10:06:30  3   finding that one of -- that the offense involves an

10:06:37  4   effort to influence the Government through intimidation

10:06:40  5   or coercion in any respect, that an upward departure may

10:06:45  6   be appropriate.  What it doesn't do, Your Honor, is

10:06:48  7   increase the criminal history from 1 all the way up to

10:06:54  8   6, to the top.

10:06:56  9          And so at page -- excuse me, at paragraph 30

10:06:59  10  of the presentence report, Mr. Collins has -- or the

10:07:06  11  probation office has given Mr. Collins that criminal

10:07:09  12  history enhancement from 1 up to 6, and we don't believe

10:07:14  13  that that is appropriate because we're operating not

10:07:17  14  under the guideline itself but, instead, the application

10:07:21  15  note.  And really, that makes a big difference for him

10:07:25  16  when they do the calculation of his -- his score within

10:07:31  17  B.O.P.  That enhancement may well put him into a

10:07:35  18  completely different security classification, which

10:07:39  19  could have two what we think are really problematic

10:07:43  20  impacts.

10:07:45  21          One, it might put him into a facility that's

10:07:46  22  at such a high security level that -- you know, that

10:07:50  23  there's just the reality of prison is the higher the

10:07:53  24  security level, the more gangs operate and the less

10:07:58  25  safety people have, so the more incentive people have to

10:08:03 1  join up with one of those organizations.  And we want to

10:08:05 2  place him, I would hope, in a situation where he's not

10:08:09 3  likely to be, kind of, captured by the clutches of a

10:08:16 4  Nazi gang in prison.  I think that would be a problem.

10:08:20 5  And that a better outcome for him and for society would

10:08:25 6  be a lower classification where, instead, he gets -- you

10:08:30 7  know, he has more personal security.  There's less of a

10:08:32 8  chance that the gangs are running the show and he ends

10:08:37 9  up leaving prison not having been in that situation.

10:08:45 10        And so I think, based on the plea, based on

10:08:48 11  the facts of this case, that the application note is how

10:08:51 12  we get the upward departure as opposed to the actual

10:08:55 13  text of the guidelines.  Under the application note, we

10:08:57 14  don't have that enhancement of his criminal history;

10:09:00 15  it's just a departure that takes us from wherever Your

10:09:04 16  Honor finds the guidelines to be up to the 120 months.

10:09:10 17        And so that's, I think, the most important

10:09:12 18  thing that we would ask Your Honor to focus on, is that

10:09:15 19  paragraph 30.  And our hope is that that paragraph is

10:09:19 20  stricken so that the total criminal history is 0, his

10:09:23 21  criminal history category is 1.

10:09:25 22        As Your Honor noted, this makes no

10:09:27 23  difference in the sentence that we're asking for, and we

10:09:31 24  worked really hard to come up with this particular

10:09:36 25  proposal to the Court as it relates to the sentence.  So

10:09:42  1   that is the first objection.

10:09:46  2          The other objections I don't -- you know, I

10:09:52  3   do think that there is some important distinction that

10:09:56  4   we would draw between what's in the presentence report

10:09:58  5   and what we think the facts show as it relates to the

10:10:01  6   leadership.  The -- and I think that, similarly,

10:10:07  7   leadership role can have an impact on security level.

10:10:12  8   The presentence report says that Mr. Collins recruited

10:10:17  9   Mr. Kryscuk, for example.  It concludes that he

10:10:21  10  basically is the leader.  I don't think that that is

10:10:28  11  fully supported by the record, or even the preponderance

10:10:33  12  of the evidence, I don't think, supports that he is the

10:10:35  13  leader of this organization.  Instead, I think what we

10:10:37  14  have is Mr. Kryscuk, who was on this Iron March Forum,

10:10:46  15  and it says that he was Kryscuk.  Said in his own words

10:10:51  16  that he was on there looking.  I'm trying to find the

10:10:56  17  exact reference here.

10:11:00  18         It's at page 14.  It's the first sentence of

10:11:03  19  the summary of his interview.  And it's -- it's the last

10:11:12  20  box there at the bottom of page 14.  It says, "Kryscuk

10:11:17  21  admitted to utilizing the Iron March Forum to find

10:11:20  22  individuals that were equipped with military training

10:11:23  23  and possess the same ideology as him.  Kryscuk stated

10:11:27  24  that he was contacted by Collins."

10:11:29  25         So, you know, to me it looks like what

10:11:35 1   happened is two people that were sort of looking for the

10:11:37 2   same thing met through a forum and that Mr. Collins did

10:11:40 3   not recruit Mr. Kryscuk.

10:11:45 4           The -- similarly, the presentence report

10:11:50 5   says about Maurino -- at least the probation office's

10:11:55 6   response to our objection to the leadership role.  And I

10:12:01 7   want to be clear:  He's -- they suggest a four-level

10:12:05 8   enhancement.  You know, I think a three or a two would

10:12:08 9   be more appropriate.  So we're not -- you know, he

10:12:14 10  was -- but, you know, this perfect hierarchy where he's

10:12:18 11  at the very top and everybody else is below him, we

10:12:21 12  don't think is supported by the record.  If you look at

10:12:23 13  that same page, the box before that, about Maurino:

10:12:27 14  "Maurino advised agents that he met Kryscuk through an

10:12:31 15  unidentified individual and was later introduced to

10:12:35 16  Collins."  So that's also on page 14.

10:12:37 17          And so, again, whereas the probation office

10:12:39 18  says that Mr. Collins recruited Kryscuk and Maurino, I

10:12:46 19  think the body of the report and their own -- the

10:12:47 20  statements of those two individuals suggest otherwise.

10:12:52 21          They say that he -- Mr. Collins recruited

10:12:55 22  Jordan Duncan, but I didn't find anything in the body of

10:12:58 23  the report to support that either.  And so, you know, I

10:13:03 24  think what we have is a group of people that are all,

10:13:05 25  sort of, pretty flat.  There are important distinctions

10:13:10  1  that I would like to raise for Your Honor's

10:13:13  2  consideration between some of these folks.  But as it

10:13:15  3  relates to the -- you know, Mr. Collins being on top

10:13:19  4  and, in particular, Mr. Kryscuk somehow being below him

10:13:23  5  and being recruited by him, I don't think that's what we

10:13:26  6  have.  I think we have, at best, an organization where

10:13:29  7  Kryscuk and Collins are looking for the same thing.

10:13:32  8  They may have gone and found other people.  And so under

10:13:35  9  that circumstance, I would suggest either a two-level or

10:13:40  10  three-level enhancement as opposed to him being, you

10:13:44  11  know, the -- the leader.

10:13:47  12          There's a couple other statements in the

10:13:51  13  presentence report that are similar to that, saying

10:13:53  14  things like, "Mr. Collins directed Mr. Kryscuk to start

10:13:58  15  manufacturing and selling guns."  I don't know for sure,

10:14:01  16  but having talked to the Government, I don't think that

10:14:04  17  the Government believes -- and it may be -- I don't

10:14:10  18  think that that's their -- the Government's position

10:14:12  19  either.  But I don't want to speak for them; I just want

10:14:14  20  to highlight that, that that idea that he's directing

10:14:17  21  Kryscuk is not consistent with the facts from our

10:14:21  22  perspective.

10:14:26  23          And this, it doesn't neatly fit,

10:14:28  24  necessarily, into the -- into the leadership-role

10:14:35  25  discussion, Your Honor.  It may be more, but I do think

| | |
|---|---|
| 10:14:40 | 1 |
| 10:14:43 | 2 |
| 10:14:46 | 3 |
| 10:14:50 | 4 |
| 10:14:52 | 5 |
| 10:14:56 | 6 |
| 10:15:00 | 7 |
| 10:15:03 | 8 |
| 10:15:08 | 9 |
| 10:15:12 | 10 |
| 10:15:16 | 11 |

1   it's really relevant for the Court to hear our position

2   about the difference between Mr. Collins and Mr. Kryscuk

3   as you look at this sentence on the whole. Because we

4   know, you know, we're here dealing with the guidelines.

5   But big picture, we have the 3553(a) factors. And,

6   really, that's what drove the discussions between us and

7   the Government to arrive at what we think is a just -- a

8   total just sentence that is -- provides specific and

9   general deterrence, that's then tempered by mercy and

10   proportionality, and we end up where what we propose to

11   the Court.

12        From our perspective, you have Mr. Kryscuk

13   who wrote this manifesto about affirmatively going out

14   and smashing down the system. And you have Mr. Kryscuk

15   who has got the list of assassination targets. You have

16   Mr. Kryscuk who has the list of energy facilities to

17   take out. And you have Mr. Kryscuk who has gone and

18   looked up how to make detonators, whose wife called the

19   FBI on him because she's worried about what he's going

20   to do.

21        You have Mr. Collins, whose writings talk

22   about hatred for other people. But his writings -- and

23   mind you, a lot of these things are written many, many

24   years ago. But he says he wants to join a legitimate

25   paramilitary group, maybe in Poland. And then you have

him having a long-term relationship with a woman and
being interested in buying land and having a place where
he can be safe.  And, you know, I don't know how -- I
don't know what the truth is.  None of us really know
what was in either of these men's mind.  But I think
that there's an important distinction between Kryscuk's
affirmative desire to go and knock down the system and
Mr. Collins's defensive preparatory behavior.  It's
really hard to sort that out.

I've spent a lot of time with Mr. Collins.
And, you know, I think that -- I just wanted to bring to
the Court's attention on behalf of Mr. Collins his
position, which is supported, I believe, by the -- or at
least not refuted by this record, that his goals were
different than Mr. Kryscuk's goals.  Mr. Kryscuk is
much, much older than Mr. Collins as well.  And that, to
me, would -- in the big picture, I think the driving
force of this idea that this group was going to go out
and commit affirmative acts of violence as opposed to
prepare in the event that society breaks down, that
there wasn't a uniformity of -- there wasn't an
agreement among all of the group members about what they
were going to do, what their purpose was.  They were a
group of people that had some fundamental agreements
about things that I think everybody else in this room

10:18:07  1    would disagree with.  But in terms of whether this group

10:18:12  2    was going to go and basically go on suicide missions, I

10:18:18  3    don't think Mr. Collins was going to do that.

10:18:22  4              Now, we have conspiracy as a separate crime

10:18:23  5    for a reason.  Because when people get together, they do

10:18:26  6    things -- they may well do things they wouldn't do

10:18:29  7    individually.  And so this is not to say it's not

10:18:32  8    dangerous.  It's not to say that the application note 4

10:18:35  9    doesn't apply.  It does apply.  Because Mr. Collins knew

10:18:39  10   about Mr. Kryscuk's plans.  He continued to assist

10:18:42  11   Mr. Kryscuk in making money for this group.  But I did

10:18:46  12   want to bring that philosophical difference that we

10:18:51  13   believe exists here between him and Mr. Kryscuk to the

10:18:53  14   Court's attention.  Because it's important for

10:18:57  15   Mr. Collins -- for the Court to know that from his

10:19:01  16   perspective, he did not intend to go out and start

10:19:05  17   assassinating people or blowing up energy facilities.

10:19:11  18   We'll never know.  We can't go back in time and figure

10:19:14  19   out what was in his mind.  But I think that the record

10:19:17  20   does provide some support for that idea that there's

10:19:20  21   that distinction.

10:19:24  22             And, you know, the record is also clear that

10:19:26  23   Mr. Collins violated the federal law, and he's pled

10:19:31  24   guilty.  And he's also agreed to this dramatic

10:19:34  25   enhancement to what would otherwise be the guideline

10:19:37  1  range because he understands this is not just your

10:19:39  2  average federal firearms, you know, violation.  This is

10:19:43  3  much more significant than that.  And he's accepted

10:19:47  4  responsibility and accepted that his conduct was part of

10:19:50  5  this -- you know, could have led to something really,

10:19:53  6  really dangerous and problematic.  And he also -- and we

10:19:56  7  also understand why the Government stepped in when it

10:19:58  8  did.  You know, this is a really hard place for the

10:20:01  9  Government to be, because in some ways the criminal law

10:20:05  10  requires them to wait for enough action to happen so

10:20:08  11  that they can then bring the case.  And if they allow

10:20:11  12  that to happen, then maybe the action is successful.

10:20:14  13  And so they stepped in early and we don't know what

10:20:18  14  would have happened if they didn't step in.  And so we

10:20:20  15  appreciate that there's a lot of tension here and we

10:20:23  16  don't know.

10:20:25  17          But in all of that, in framing this whole

10:20:29  18  case, there's a lot of uncertainty.  But what is certain

10:20:31  19  is he violated the federal law.  He's got a sentence of

10:20:35  20  up to ten years for that violation.  He's accepted

10:20:38  21  responsibility for his violation, and he agrees and

10:20:42  22  stipulates to this Court enhancing his sentence from

10:20:47  23  what would be on the lower end of that ten years all the

10:20:49  24  way to the top.  And then, frankly, Your Honor, from

10:20:53  25  there, I just look at this practically, that he's going

10:20:58  1    to have a much better chance of success in society if we

10:21:02  2    don't put him as the level 6 and we give him the

10:21:07  3    opportunity to get the classes and be around people who

10:21:10  4    have something to live for.

10:21:11  5            He's got a lot to live for.  He's a young

10:21:14  6    man.  You've read the character letters.  You've seen

10:21:17  7    that his family is providing him a lot of support, that

10:21:20  8    he has internalized and learned lessons from where he

10:21:23  9    was.  I don't know if he's sorted it all out.  I just

10:21:27  10   don't know that.  But I think if he goes into custody

10:21:31  11   and he's taken into the clutches of a, you know, Nazi

10:21:36  12   gang, it's going to be much more difficult for us to

10:21:39  13   have confidence that he's going to leave prison in a

10:21:41  14   better situation than he enters it, versus the

10:21:44  15   alternative where I think he really will get some

10:21:47  16   significant remedial assistance.  Thank you, Your Honor.

10:21:51  17           THE COURT:  Thank you, Mr. Abrams.

10:21:55  18           Ms. Kocher, I want to start with -- I did

10:21:58  19   note that it said application note 4 and not the

10:22:02  20   guideline.  I want to know the contemplation of the

10:22:05  21   parties in entering into this 11(c)(1)c plea and was it

10:22:09  22   contemplated that the Level 6 enhancement which is in

10:22:11  23   the body -- we use the application notes when we apply

10:22:14  24   the guidelines.

10:22:15  25           MS. KOCHER:  Correct.  No, Your Honor,

| | |
|---|---|
| 10:22:16 | 1 |
| 10:22:20 | 2 |
| 10:22:24 | 3 |
| 10:22:27 | 4 |
| 10:22:28 | 5 |
| 10:22:28 | 6 |
| 10:22:30 | 7 |
| 10:22:34 | 8 |
| 10:22:38 | 9 |
| 10:22:44 | 10 |
| 10:22:47 | 11 |
| 10:22:49 | 12 |
| 10:22:54 | 13 |
| 10:22:59 | 14 |
| 10:23:01 | 15 |
| 10:23:05 | 16 |
| 10:23:08 | 17 |
| 10:23:11 | 18 |
| 10:23:16 | 19 |
| 10:23:19 | 20 |
| 10:23:21 | 21 |
| 10:23:27 | 22 |
| 10:23:29 | 23 |
| 10:23:31 | 24 |
| 10:23:36 | 25 |

the -- I had three very quick opening remarks as -- and
that is one of them.  The Government supports the upward
departure under note 4, not the application of the
enhancement.

                    THE COURT:  Okay.

                    MS. KOCHER:  We've got no objection to that.
The Department of Justice is very circumspective about
the application of that terrorism enhancement.  And the
crime to which Mr. Collins pled did not itself intend to
promote the federal crime of terrorism.  Now, that
federal crime of terrorism is that list of specific
offenses.  So it is my position here before you today,
and it was at the time of the plea.  And I -- my
suspicion is that I communicated this to the probation
office not in a formal filing but as a response to an
e-mail.  And my guess is it's gotten misplaced and
that's why it didn't make into the addendum.  My
apologies to probation office and all.

                    Is that the crime to which he's pled is
specifically to the manufacturing of those firearms.
And I am not standing ready to prove that the firearm
possessed and manufactured by Kryscuk could actually
damage the power grid, which is the federal crime of
terrorism that we've connected it to.  So to avoid that
difficulty and the possibility that that enhancement

10:23:39 1 would not in the end be applied by any reviewing court,

10:23:45 2 should there be one, we went right to note 4.

10:23:49 3          As to the defense's position what note 4 --

10:23:52 4 and it sounds like you're familiar with that -- is that

10:23:55 5 the offense of conviction -- so in this case, it's the

10:23:57 6 gun conviction -- was calculated to influence or affect

10:24:02 7 the conduct of the government by intimidation of

10:24:06 8 coercion; causing mayhem in the streets, which was, in

10:24:12 9 fact, the goal in part.  And triggering that mayhem

10:24:17 10 would be calculated to influence the government conduct.

10:24:20 11 As the lack of societal control grew, government would

10:24:24 12 not be able to respond.  There is, in fact, a basis in

10:24:28 13 fact for that upward departure under note 4.  And the

10:24:31 14 Government does stand by that provision in the plea and,

10:24:35 15 in fact, would argue against the applicability of the

10:24:38 16 enhancement.  And I agree that the criminal history

10:24:41 17 range would stay at a 1 in that event.

10:24:44 18          If I can go on -- different subject;

10:24:49 19 correct?  I had also wanted to bring to the Court's

10:24:51 20 attention that at paragraph 15, which I believe is where

10:24:56 21 defense was referencing that Mr. Collins recruited

10:24:59 22 Kryscuk, I failed to see that.  That is not accurate.  I

10:25:04 23 am in full agreement.  I disagree, however, as to

10:25:09 24 recruiting Jordan Duncan.  They were, while like-minded,

10:25:16 25 certainly, Duncan did not otherwise know anyone.  In the

10:25:22 1   group, right? There at Camp Lejeune together, clearly

10:25:26 2   Collins is the one who introduced Mr. Duncan to the

10:25:29 3   group. That's recruitment. He also recruited

10:25:32 4   Codefendant Hermanson and an uncharged person as well,

10:25:38 5   Your Honor. So he recruited the most, in fact, of any

10:25:42 6   other person involved in the conspiracy by recruiting

10:25:45 7   those three.

10:25:47 8           We do disagree -- and I hesitate -- it is an

10:25:53 9   11(c)(1)c that both parties want to pursue. So I am a

10:25:57 10   little at a loss at the length of the remarks made to

10:26:02 11   you because it sounded more like an attempt to get

10:26:06 12   Kryscuk a higher sentence than to help Mr. Collins's own

10:26:10 13   sentencing. So trying to walk that line, we do take a

10:26:17 14   different position as to the leadership role. I do

10:26:20 15   believe that Mr. Collins was an organizer and a leader;

10:26:25 16   not the leader. It's the Government's position that the

10:26:29 17   evidence establishes that Duncan, Kryscuk, and Collins

10:26:32 18   each led the group in different ways.

10:26:35 19           This defendant, Mr. Collins, the uncharged

10:26:38 20   and other members of the group, and those who surrounded

10:26:41 21   them at the time, inform us that Mr. Collins was the

10:26:45 22   ideological leader. That he basically had that role in

10:26:50 23   the group. He has the cultural background. He spoke

10:26:57 24   Polish. I noticed that the presentence report also says

10:27:01 25   he speaks Russian. And that, too -- I'm not certain

| | |
|---|---|
| 10:27:03 | 1 |
| 10:27:11 | 2 |
| 10:27:16 | 3 |
| 10:27:19 | 4 |
| 10:27:23 | 5 |
| 10:27:27 | 6 |
| 10:27:32 | 7 |
| 10:27:34 | 8 |
| 10:27:40 | 9 |
| 10:27:43 | 10 |
| 10:27:47 | 11 |
| 10:27:51 | 12 |
| 10:27:54 | 13 |
| 10:27:56 | 14 |
| 10:27:58 | 15 |
| 10:28:03 | 16 |
| 10:28:08 | 17 |
| 10:28:13 | 18 |
| 10:28:17 | 19 |
| 10:28:20 | 20 |
| 10:28:25 | 21 |
| 10:28:30 | 22 |
| 10:28:35 | 23 |
| 10:28:41 | 24 |
| 10:28:47 | 25 |

about that fact.  But that -- I don't know as to that.

The rest of the group viewed Collins as the ideological leader.  In addition to having recruited the most members to the group, he also provided goods by theft from Camp Lejeune.  He provided body armor to each member of the group.  That was recovered, for the most part, in the searches that were done at the time of their arrest.  There is no question that Mr. Collins was both an organizer, having recruited the majority of the members, and led ongoing criminal activity in conjunction with both Kryscuk and Duncan, and we do not find either a difference in the leadership role or the moving on to the philosophical difference between Kryscuk and Collins.

I appreciate the position, particularly now, seeing his conduct in black and white printed in that presentence report, how that might affect an individual who at the time was not processing what he was doing. And so it is a very different thing, I think, when you see it in writing and the reaction that *that's not what I meant to do*.  But the communications between all of the defendants are replete with references to these acts of violence.  In fact, Defendant Kryscuk's wife that counsel mentioned as having called, concerned, herself said that she overheard Mr. Collins and Mr. Duncan

discussing when the -- when the power goes out, when the

grid goes out.  So it was clearly a part of that.

All of that to say, but for the statement in

regard to Mr. Kryscuk, Collins did not recruit him.

Similarly, I think paragraph 19, where it reflects that

Kryscuk took direction from Collins, I actually think

that that -- I'm wondering if the information that was

used for that statement was that Kryscuk took orders

from Collins for guns.  Because that's what was

happening.  Right?  Collins ordered guns to be made by

Kryscuk.  That is to say, you know, I've got a guy here

in North Carolina, we'll pay -- you know, he will pay

you and you make the guns.  And I'm wondering if it's

that type of scrivener's -- or interpretation of

something that was read.

But, yeah, we certainly agree that Collins

was not directing Kryscuk to make the guns; rather, he

placed orders for them as part of a conspiracy.

For Your Honor's resolution of the

objections, I think it would be helpful for me to know

if you would like more specific information or witness

to testify.

THE COURT:  All right.  I actually think

both parties agree on much of it.  The question is how

does it get interpreted under the guidelines.

| | |
|---|---|
| 10:30:37 | 1 |
| 10:30:40 | 2 |
| 10:30:42 | 3 |
| 10:30:46 | 4 |
| 10:30:51 | 5 |
| 10:30:56 | 6 |
| 10:31:05 | 7 |
| 10:31:10 | 8 |
| 10:31:13 | 9 |

MR. ABRAMS:  Yes, Your Honor.

THE COURT:  I'll accept the contemplation of the parties in the 11(c)(1)c context at a level criminal history 1 and not a criminal history 6 applies.  I'm taking that as a stipulated position between the parties that the crime of conviction and not the relevant conduct.  But the crime of conviction is contemplated not to include the terrorism enhancement under the guidelines.

The -- so I'm being very careful about how I come back to the 1.  As I read the terrorism enhancement, if the offense is a felony that involved or was intended to promote a federal crime of terrorism, increase by 12 levels, but if the resulting offense level is less than level 30, to increase to level 32.  And then (b) says, in each such case, the defendant's criminal history category from Chapter 4 shall be category 6.

So is it contemplated that this is actually a departure from the guidelines to bring his base offense level up, notwithstanding the fact that the crime of conviction is not a felony intended to promote a federal crime of terrorism?  Is that correct?

MR. ABRAMS:  Yes, Your Honor.

MS. KOCHER:  Yes, Your Honor.

10:32:17  1        THE COURT:  So this is a guidelines

10:32:20  2   departure up, not an application of the guideline

10:32:23  3   itself?

10:32:24  4        MS. KOCHER:  Correct.  Although it is an

10:32:26  5   upward departure specifically provided for in the

10:32:29  6   guidelines.

10:32:31  7        THE COURT:  I understand that it is -- I

10:32:31  8   understand.  But I'm not doing it under the provision;

10:32:36  9   I'm doing it under otherwise -- similar activity

10:32:39  10  otherwise contemplated but not an application of 3A1.4.

10:32:45  11  Because the -- you can't get to an application note

10:32:48  12  unless you are applying it.  You have to apply something

10:32:52  13  and then the note tells you how to apply it.  So if I'm

10:32:55  14  not applying the enhancement as a 3A1.4 enhancement, I

10:33:00  15  can't logically, in my mind -- and I'm making two

10:33:02  16  records here.  I can't logically, in my mind, apply an

10:33:06  17  application note without applying the guideline because

10:33:09  18  the application note tells me how to apply a guideline.

10:33:14  19  It is application of that guideline, not an independent

10:33:17  20  and a freestanding guidelines provision.  However, I am

10:33:21  21  allowed to consider an upward departure under the

10:33:26  22  guidelines where the guidelines do not directly

10:33:29  23  contemplate the circumstances before me.

10:33:34  24       It's a (c)(1)c plea and both parties want me

10:33:41  25  to come to this outcome.  I will tell you that we're

| | |
|---|---|
| 10:33:45 | 1 |
| 10:33:50 | 2 |
| 10:33:55 | 3 |
| 10:34:00 | 4 |
| 10:34:04 | 5 |
| 10:34:07 | 6 |
| 10:34:11 | 7 |
| 10:34:14 | 8 |
| 10:34:15 | 9 |
| 10:34:17 | 10 |
| 10:34:21 | 11 |
| 10:34:25 | 12 |
| 10:34:36 | 13 |
| 10:34:41 | 14 |
| 10:34:45 | 15 |
| 10:34:49 | 16 |
| 10:34:52 | 17 |
| 10:34:57 | 18 |
| 10:35:03 | 19 |
| 10:35:05 | 20 |
| 10:35:11 | 21 |
| 10:35:15 | 22 |
| 10:35:21 | 23 |
| 10:35:25 | 24 |
| 10:35:31 | 25 |

looking at a difference between 360 to life, if we're not under 11(c)(1)c under the guidelines. And then we're capped by the statute. So some of this is an agreement to a statutory cap and that Mr. Abrams has agreed not to fight to come down. The Government's agreed to drop the crimes that would bring us to 360. I understand the course of --

MS. KOCHER: Events.

THE COURT: -- events between the parties. I'm just making sure that everybody understands that I'm going to agree to the criminal history category 1. I'm going to apply the guidelines as a departure under the guidelines. I'm going to depart to the level 32 because it contemplates such a departure as being sufficiently similar. Application note 4 contemplates conduct sufficiently similar, but the parties have agreed the 3A1.4 simpliciter does not apply. So I'm going to treat it as analogous to 3A1.4 but not an actual application of 3A1.4 sufficiently analogous to warrant the departure under the guidelines to a position as if 3A1.4 had applied, but -- (a) had applied, but not 3A1.4(b) because that would then overstate his culpability.

I also find compelling Mr. Abrams's arguments under 3553, to the extent it would be necessary for me to vary backwards to a 1, that the --

10:35:35  1    I'm not doing that.  That's not how I'm getting there.

10:35:38  2            But I'm also going to say, in the

10:35:39  3    alternative, I would also vary backwards to a 1 for the

10:35:43  4    reasons stated by Mr. Abrams in his arguments about the

10:35:46  5    effect that this would have on Mr. Collins in terms of

10:35:50  6    his capacity to serve in a position where a young man

10:35:56  7    who went down a very deep and dark rabbit hole and one

10:36:01  8    that could have led to very deep and dark outcomes did

10:36:04  9    not, in fact, reach the ultimate portion.  And as with

10:36:09  10   all crimes that are crimes that contemplate future

10:36:13  11   activity, there may be the moment when you are faced

10:36:17  12   with actually harming a human being when you stop.

10:36:21  13           And there is -- there is talk.  There is

10:36:28  14   cosplay.  There is actual conspiracy.  There is

10:36:36  15   preparation.  There's a spectrum here.  And then there's

10:36:39  16   the moment when a human being is in front of you and

10:36:42  17   you're faced with pulling the trigger.  The military

10:36:44  18   spends millions of dollars figuring out how do I get one

10:36:49  19   human being to kill another human being in a just world.

10:36:54  20   Because people don't want to do it.  And some

10:36:56  21   significant percentage of our soldiers will not pull the

10:37:00  22   trigger.  They don't want to kill.  It's something as

10:37:03  23   hardwired in us to do it, and we have to dehumanize the

10:37:07  24   person on the other side to make that possible.  So it

10:37:09  25   is entirely possible that at the moment we actually get

10:37:12 1    there, this defendant would not have pulled the trigger.

10:37:14 2            So that is part of the Court's contemplation

10:37:17 3    and part of the Court's consideration of Mr. Abrams's

10:37:21 4    arguments, that it would ultimately overpunish the

10:37:25 5    defendant in the way his time is served and expose him

10:37:29 6    to influences that increase the risk post-sentence to

10:37:34 7    society.

10:37:36 8            And so in contemplation of all of that, I am

10:37:40 9    going to exercise my discretion under the guidelines not

10:37:42 10   to apply the enhancement simpliciter, to use the

10:37:55 11   application note, and the way the application note

10:37:57 12   suggests it would apply in the subset of cases but not

10:37:59 13   this one as a basis to alter the Court's statements

10:38:07 14   under the guidelines.  We arrive at the same place with

10:38:11 15   the same number except for the criminal history

10:38:16 16   category, which would -- if the guideline were to apply,

10:38:18 17   would become a 6.  I can do it that way, which is, I

10:38:23 18   believe, the way contemplated by the parties.  Or I can

10:38:27 19   simply vary back to a 1.  In either event, we come back

10:38:31 20   to a criminal history category 1, which is where we

10:38:31 21   land.

10:38:32 22           I'm happy to hear from either party if they

10:38:35 23   believe the Court needs to contemplate something else

10:38:37 24   for the record.  Because I believe there's my record and

10:38:39 25   then there's a record that may end up before three more

10:38:42  1   judges.

10:38:44  2           MR. ABRAMS:  Your Honor, we agree with the

10:38:46  3   way you've approached this and how you've arrived at the

10:38:49  4   result, both under the guidelines and 3553(a) in the

10:38:53  5   alternative.  It's -- was what was contemplated by the

10:38:57  6   parties, and we stipulate that it is a correct and

10:39:00  7   appropriate way to address the situation.  Thank you.

10:39:02  8           THE COURT:  All right.  Thank you.

10:39:04  9           Ms. Kocher?

10:39:04  10          MS. KOCHER:  Likewise, Your Honor.

10:39:05  11          THE COURT:  All right.  So that's where we

10:39:08  12  are with regard to criminal history category.  We no

10:39:11  13  longer increase it to 6; we remain at 1, for the reasons

10:39:16  14  stated on the record.  I'm not sure I could repeat them

10:39:20  15  succinctly at this time.

10:39:23  16          As the leadership role, I agree with

10:39:29  17  Mr. Abrams that the evidence does not establish the

10:39:31  18  leader.  I also agree with Ms. Kocher that that's not

10:39:35  19  what the guideline requires.  You can be a leader.  And

10:39:40  20  an organization can have several people in leadership

10:39:43  21  and organizer roles.  This was a group that had five or

10:39:48  22  more members, was seeking to increase the number of

10:39:51  23  members that it ultimately would have, was actively

10:39:54  24  recruiting and participating in that way.  That the

10:39:57  25  online forums were used to lay out ideology, lay out

plans, and then recruit people on that basis.  The
statements by Mr. Collins that have been provided to the
Court and that are not in dispute suggest that he was,
in fact, a leader -- a leader or organizer.  And the
record won't show it, but I'm putting italics on "a"
leader as opposed to "the" leader.  But he was a leader
and I believe the leadership enhancement role properly
applies under the guidelines.

          The parties agree that he did not recruit
Mr. Kryscuk so much as it was that like-minded people
found each other on an internet forum and spoke to each
other and came together.  I also believe the parties
agree that Mr. Kryscuk is in an interesting place.  He
is providing the firearms, but he's providing the
firearms on a cash basis, not as an in-kind contribution
to the group.  And he's also selling them, it looks
like, at the same price to other individuals who are not
members of the group, although it was contemplated they
might become members of the group.  So there is access
to these unregistered and unserialized firearms.  I want
to be careful with how we deal with that, particularly
as it regards to the long-term viability of that
position.

          I'm being thoughtful about where we stand
with regard to the Second Amendment right now.  But as

10:41:37  1   the law now stands, this is the state of the law and we

10:41:42  2   are proceeding under the state of the law, not under

10:41:44  3   some potential future prediction of what might happen.

10:41:52  4          There is concern -- and I think being able

10:41:54  5   to manufacture for yourself is one thing, and that is

10:41:58  6   the thing that may be in difficulty.  I don't think

10:42:02  7   manufacturing unserialized firearms and sending them

10:42:05  8   down the stream of commerce to other, multiple

10:42:07  9   individuals is at any risk right now.  There's no legal

10:42:09  10  jeopardy in my mind regarding that conduct, which is

10:42:14  11  different conduct than manufacturing for one's self in

10:42:17  12  one's home.  This is not that.  This is making it a

10:42:24  13  significant part of the stream of commerce, placing it

10:42:27  14  into competition with other participants in the stream

10:42:29  15  of commerce, and I believe stands within the commerce

10:42:32  16  clause power unfettered by the Second Amendment.  So

10:42:36  17  I'm being very careful about what I'm talking about for

10:42:39  18  the record.

10:42:40  19         The parties agree that he was not directing

10:42:46  20  Mr. Kryscuk with regard to the manufacture of firearms.

10:42:52  21  I make no finding as to the nuanced differences in

10:42:57  22  purpose.  Mr. Abrams suggests that there are nuanced

10:43:02  23  differences in purpose at wanting to have a,

10:43:08  24  quote-unquote, white ethnostate that survives potential

10:43:14  25  future civil disruption, on having the ability to

maintain that in a space and moving to an isolated area

for the purpose of having security. Nothing I have said

about that would be illegal. That would be legal. And

I'm not punishing that or intending to punish that in

any way. You can say, "I want to move to a place where

I think is safer, I have my prejudices about what I

believe constitutes safer." Those things are all legal

and implicate your First Amendment rights. I'm not

punishing on that basis, and I want to be clear.

However, making plans to engage in actions

of violence that will bring on the civil unrest is

illegal. Once you've crossed the line from mere

preparation to active contemplation and then take active

steps, you've crossed the line. I think the -- the

degree of enthusiasm for the plans that I think are

clearly made by Mr. Kryscuk with regard to attacks on

energy facilities and the discussion of a list of

particular leaders who are going to be targeted. Again,

we're contemplating future action there. We're not at

the trigger-pulling point yet.

So inchoate crime is philosophically

difficult. We need to be able to let people come close

enough to be sure they are firm of purpose. We have a

right to intervene and stop them and to punish them

because they have crossed that line. I believe, in this

| | | |
|---|---|---|
| 10:44:58 | 1 | case, we have crossed that line and to permit it. But |
| 10:45:00 | 2 | that is not the charge to which he has ultimately pled |
| 10:45:03 | 3 | guilty. We're talking about how do we think about |
| 10:45:05 | 4 | relevant conduct and to the extent to which the relevant |
| 10:45:08 | 5 | conduct applies, none of which makes any difference |
| 10:45:15 | 6 | either to the guideline or the proposed sentence which |
| 10:45:21 | 7 | both parties agree to. I'm just making sure that my |
| 10:45:24 | 8 | record reflects that I have engaged fully with |
| 10:45:26 | 9 | Mr. Abrams's argument and that I understand it. |
| 10:45:26 | 10 | MR. ABRAMS: Thank you, Your Honor. |
| 10:45:29 | 11 | THE COURT: Mr. Abrams, do you need anymore |
| 10:45:31 | 12 | from me in that regard? |
| 10:45:32 | 13 | MR. ABRAMS: No, Your Honor. Thank you. |
| 10:45:38 | 14 | THE COURT: And I do believe the record |
| 10:45:39 | 15 | shows that he did recruit -- or significantly |
| 10:45:42 | 16 | participate in recruiting Mr. Duncan and Mr. Hermanson. |
| 10:45:47 | 17 | There's some other uncharged participants who I think |
| 10:45:50 | 18 | who went in and out of the conspiracy who were also in |
| 10:45:54 | 19 | contact with Mr. Collins over time. Based on the |
| 10:45:55 | 20 | information previously provided to the Court and the |
| 10:45:57 | 21 | information in the presentence report, that the Court |
| 10:45:58 | 22 | has presided over multiple hearings in this case and has |
| 10:46:01 | 23 | heard a lot of information over time, all of which |
| 10:46:05 | 24 | remains part of the record. |
| 10:46:07 | 25 | All right. So, ultimately, the change |

10:46:11  1    that's being made to the guide -- to the presentence

10:46:15  2    report is to reduce him from a criminal history

10:46:18  3    category 6 to a criminal history category 1.  The other

10:46:24  4    enhancements remain in place.  At the appropriate time,

10:46:30  5    I'll also make a recommendation to the Bureau of Prisons

10:46:32  6    that he be treated as a criminal history category 1.

10:46:35  7              MR. ABRAMS:  Thank you, Your Honor.

10:46:37  8              THE COURT:  And for in terms of placement.

10:46:41  9    There will ultimately be, of course, some separation

10:46:44  10   order issues --

10:46:45  11             MS. KOCHER:  Thank you.

10:46:46  12             THE COURT:  -- that I believe all the

10:46:48  13   parties will have to work with B.O.P. on.  That's going

10:46:52  14   to be beyond the Court's purview.  That's a B.O.P.

10:46:57  15   issue, not a sentencing-court issue.  I will recommend

10:46:59  16   appropriate -- I will recommend facilities as requested,

10:47:04  17   but I will also state that that is subject to any

10:47:06  18   appropriate B.O.P. separation order.  I don't make those

10:47:09  19   orders; I make recommendations.

10:47:11  20             All right.  Have we adequately dealt with

10:47:15  21   everything that constitutes an objection to the

10:47:19  22   presentence report?

10:47:20  23             MR. ABRAMS:  Yes, Your Honor.  Thank you.

10:47:21  24             THE COURT:  All right.  So with that in

10:47:49  25   mind, the total offense level becomes -- or remains 37,

criminal history category becomes 1.  The advisory

guideline range is 120 months, which is the statutory

maximum.  And the Court notes there's a stipulated

sentence under 11(c)(1)c, that a sentence of ten years'

confinement resulting from the application of the upward

departure provision of U.S. Sentencing Guideline 3A1.4,

note 4 was specifically stated as the agreed-upon reason

in the guidelines, and the Court accepts that.

MR. ABRAMS:  Thank you, Your Honor.

THE COURT:  All right.  The guideline

computation was arrived at as follows:  Base offense

level is 18.  Two-level enhancement because of the

offense involved three to seven firearms.  Four-level

enhancement for use in connection -- used or possessed

in connection with another felony offense; or possessed

or transferred any firearm or ammunition with knowledge,

intent, or reason to believe that it would be used or

possessed in conviction with another felony offense.

The Court treats that future contemplation as

significant.

There's a 12-level enhancement which the

Court has applied not under 3A1.4(a) but under the

3A1.4(a), note 4.  And that is a departure because 3A1.4

is not being applied simpliciter.  There's a four-level

enhancement for role in the offense.  The defendant was

| | | |
|---|---|---|
| 10:50:23 | 1 | an organizer or leader, increase by four levels.  I find |
| 10:50:28 | 2 | as a fact that he was not the top of a pyramid but was |
| 10:50:32 | 3 | amongst multiple individuals who held significant |
| 10:50:36 | 4 | leadership roles across the contemplated organization, |
| 10:50:40 | 5 | and that the intent of the parties was to grow that |
| 10:50:44 | 6 | organization into a full-fledged paramilitary, as stated |
| 10:50:48 | 7 | by this defendant, who stated in multiple statements |
| 10:50:53 | 8 | that he intended to find, recruit individuals with |
| 10:50:57 | 9 | particular military backgrounds and training, and he |
| 10:51:00 | 10 | contemplated his own participation in the Marine Corps |
| 10:51:03 | 11 | as an essential first step and talked about his |
| 10:51:06 | 12 | commitment to future growth of a paramilitary |
| 10:51:09 | 13 | organization.  No adjustment for obstruction of justice. |
| 10:51:12 | 14 | The adjusted offense level subtotal is 40. |
| 10:51:16 | 15 | There's been three points of credit for timely |
| 10:51:18 | 16 | acceptance of responsibility, which has lead to the |
| 10:51:21 | 17 | total offense level of 37 in this matter. |
| 10:51:25 | 18 | The Court notes but for the application -- |
| 10:51:31 | 19 | yes, sir. |
| 10:51:33 | 20 | THE PROBATION OFFICER:  May I approach? |
| 10:51:34 | 21 | THE COURT:  Please. |
| 10:51:34 | 22 | (The following was held at the bench:) |
| 10:51:41 | 23 | THE PROBATION OFFICER:  I think if |
| 10:51:43 | 24 | you're applying the 12-level, it has to be |
| 10:51:44 | 25 | applied under 3A1.4.  I think that the |

10:51:47    1          application notes would be that this does

10:51:49    2          not apply, and then that you can then depart

10:51:51    3          to get back to the same --

10:51:53    4              THE COURT:  That's what I'm doing.

10:51:54    5              THE PROBATION OFFICER:  Okay.  So I

10:51:55    6          think this would not apply.

10:51:56    7              THE COURT:  It doesn't apply as stated.

10:51:58    8          This now goes out and then becomes a

10:52:02    9          departure to the same 12 points.

10:52:05   10              THE PROBATION OFFICER:  Okay.  But I

10:52:05   11          think for the record here, that this 12

10:52:07   12          would not apply.  And --

10:52:11   13              THE COURT:  Well, I think I'm saying

10:52:12   14          that -- for the record, I'm -- I am

10:52:14   15          departing upward by 12 points to come to the

10:52:17   16          37.  So I'll make that clear.  We come to

10:52:22   17          the same place; it just -- this one drops

10:52:24   18          out the way it's written, and then it says

10:52:27   19          the Court now departs upward by 12 points,

10:52:29   20          which takes us to our 40, then we reduce by

10:52:32   21          three points.

10:52:32   22              THE PROBATION OFFICER:  I think for

10:52:33   23          this section, though, I think that we would

10:52:35   24          have to be at -- that the 12 would not apply

10:52:38   25          here.  So it's -- the offense level here

| | | |
|---|---|---|
| 10:52:41 | 1 | would become 25 and the criminal history |
| 10:52:45 | 2 | category 1. |
| 10:52:49 | 3 | THE COURT:  I don't -- I don't think |
| 10:52:52 | 4 | so.  But I understand the position and -- I |
| 10:52:57 | 5 | think the way I'm doing it is acceptable. |
| 10:52:59 | 6 | THE PROBATION OFFICER:  Okay. |
| 10:52:59 | 7 | THE COURT:  All right.  Thank you. |
| 10:53:02 | 8 | (End bench conference.) |
| 10:53:06 | 9 | THE COURT:  All right.  After discussion |
| 10:53:08 | 10 | with my probation officer, I want to be clear what has |
| 10:53:11 | 11 | happened for my record in the event there's any |
| 10:53:13 | 12 | confusion.  The 12-level enhancement under |
| 10:53:17 | 13 | victim-related adjustment is not an enhancement under |
| 10:53:21 | 14 | the guideline 3A1.4.  That has fallen out of our |
| 10:53:25 | 15 | contemplation.  It is an enhancement by a departure of |
| 10:53:29 | 16 | 12 levels to take us to the same place, which has led to |
| 10:53:33 | 17 | the Court's stated adjusted offense level subtotal of |
| 10:53:38 | 18 | 40, includes the 12-level departure upwards.  And then |
| 10:53:45 | 19 | we have the three points of credit for timely acceptance |
| 10:53:47 | 20 | of responsibility. |
| 10:53:51 | 21 | The sentencing options available to the |
| 10:53:54 | 22 | Court, the statute provides for zero to ten years.  The |
| 10:53:57 | 23 | guidelines are capped at 120 months by -- by the |
| 10:54:03 | 24 | operation of the guideline.  A 37/I would have had a 210 |
| 10:54:11 | 25 | to 262 guideline range.  But we're now capped at 120. |

10:54:20 1 The statute provides for zero to three years on

10:54:22 2 supervised release. The guidelines recommend one to

10:54:24 3 three years. The statute provides for possibility of

10:54:26 4 one to five years on probation. This defendant is

10:54:30 5 ineligible for probation under the guidelines. Maximum

10:54:34 6 statutory fine is $250,000. The guidelines --

10:54:38 7 Does that change my guidelines fine range?

10:54:42 8 THE PROBATION OFFICER: It does not, Your

10:54:43 9 Honor.

10:54:45 10 THE COURT: So we're at 40,000 to $250,000

10:54:49 11 guidelines range. Restitution is not applicable and

10:54:52 12 there's a special assessment of $100 under both the

10:54:55 13 statute and the guidelines.

10:55:04 14 Mr. Abrams, I believe some of your 3553

10:55:07 15 remarks are encompassed in your prior statement, but

10:55:09 16 I'll hear from you on any additional remarks you wish to

10:55:11 17 make on behalf of your client concerning the 3553

10:55:14 18 factors.

10:55:14 19 MR. ABRAMS: Thank you, Your Honor. I'll

10:55:15 20 just incorporate what arguments we've already made, and

10:55:18 21 the information that's in the character letters as well.

10:55:21 22 Thank you.

10:55:21 23 THE COURT: All right.

10:55:23 24 All right. I've read a lot of character

10:55:26 25 letters, many from friends and family members.

10:55:30 1    Dominique Kurzawa-Howe, your mother.  Maria Longo, Erin

10:55:35 2    Preble.  Krystyna and Julian Kurzawa, your grandparents.

10:55:38 3    David Miller, William Premo, Douglas Howe.  It's clear

10:55:47 4    that you have a lot of people who love you in your life

10:55:50 5    and are waiting for you to come out the far side of

10:55:52 6    this.  As I said earlier, I think it is possible to get

10:55:57 7    into an echo chamber that doesn't reflect your whole

10:56:01 8    life.  And that's where we are, was a lot of time spent

10:56:04 9    in an echo chamber that led you to a place that is not

10:56:09 10   the place that is reflected by the people who wrote

10:56:11 11   these letters.  They saw a very different person.

10:56:15 12          I'm happy to listen to anything you want me

10:56:16 13   to say as I consider your sentence.  You don't have to

10:56:23 14   make any remarks if you don't wish, but I'm happy to

10:56:27 15   listen.

10:56:27 16          THE DEFENDANT:  I really have much to say,

10:56:29 17   but thank you for your judgment.

10:56:31 18          THE COURT:  All right.  You can have a seat.

10:56:37 19          All right.  Ms. Kocher, I'll hear from you.

10:56:40 20          MS. KOCHER:  Your Honor, the Government just

10:56:42 21   stands by this plea agreement.  As both the Court and

10:56:46 22   counsel have noted, it was a joint effort to try to

10:56:50 23   bring resolution to this case, and we do believe that

10:56:55 24   this is a just and appropriate outcome considering

10:56:59 25   3553(a).  And that would be the Government's request, is

10:57:03  1   the ten years.

10:57:03  2             THE COURT:  All right.  Thank you, counsel.

10:57:05  3             Mr. Abrams, any response you wish to make?

10:57:07  4   You don't have to.

10:57:08  5             MR. ABRAMS:  No.  Thank you, Your Honor.

10:57:10  6             THE COURT:  All right.  Here's what happens

10:57:12  7   next.  I ordinarily say I would recount the arguments

10:57:17  8   that I've heard, except we've had a lengthy discussion

10:57:20  9   of each of the arguments that might apply in this case,

10:57:22  10  so I won't do that at this point.  It's my turn to talk

10:57:25  11  about the 3553 factors.  And then, Mr. Collins, at the

10:57:28  12  appropriate time, I'll tell you to stand when I'm ready

10:57:29  13  to pronounce your sentence.

10:57:32  14             This Court recognizes its obligation under

10:57:35  15  Section 3553(a) to impose a sentence that is sufficient

10:57:37  16  but not greater than necessary to comply with the

10:57:40  17  purposes set forth in Section 3553(a).  Consider all of

10:57:45  18  the arguments defense counsel has made, the letters, and

10:57:50  19  the arguments of the assistant United States attorney.

10:57:54  20             For the record, the defendant did not

10:57:55  21  allocute.

10:57:58  22             I recognize the sentencing guidelines are

10:58:00  23  advisory; they are not mandatory.  And in some ways,

10:58:03  24  this is not a guidelines case.  This is an 11(c)(1)c.

10:58:07  25  The guidelines are double what the agreed-upon plea is,

10:58:15 1   and there's a statutory cap. I take the guidelines

10:58:21 2   seriously, but they're not driving this case. I've

10:58:24 3   considered the relevant factors under Title 18, United

10:58:28 4   States Code Section 3553(a), including the nature and

10:58:30 5   circumstances of the offense and the history and

10:58:32 6   characteristics of the defendant. Those have been

10:58:34 7   discussed at length as we talked about the correct

10:58:38 8   application of the guidelines.

10:58:42 9       And I believe Mr. Abrams when he says that

10:58:44 10   the person who is before me now is not the person who

10:58:49 11   was much younger, much more impressionable, and in a

10:58:53 12   much darker place. However, I just have to note for the

10:59:00 13   record that young people in dark places do terrible

10:59:03 14   things, and the United States acted appropriately in

10:59:05 15   investigating this case and bringing it. It does affect

10:59:11 16   the fact that I am accepting this 11(c)(1)c. This is

10:59:15 17   one that I could have rejected. I note for the record I

10:59:17 18   am fully aware. I could have said no and sent it back

10:59:19 19   and forced the parties to do more work if I had intended

10:59:24 20   to force a longer sentence or force the parties to

10:59:28 21   contemplate something else. I did not do that.

10:59:32 22       I recognize that the sentence imposed must

10:59:35 23   reflect the seriousness of the offense, promote respect

10:59:37 24   for the law, and provide just punishment for the

10:59:39 25   offense. The proposed sentence does that. Recognize

10:59:42 1    the need to afford adequate deterrence of criminal
10:59:44 2    conduct and to protect the public from further crime of
10:59:47 3    the defendant.
10:59:48 4            Mr. Collins, the reason I didn't send this
10:59:50 5    back and try to force longer is I think you're being
10:59:53 6    fully punished -- very fully punished for what you
10:59:57 7    actually did, and I don't think that we need to keep you
11:00:01 8    locked up any longer than is being contemplated by this.
11:00:05 9    You can spend your time in federal prison or you can
11:00:08 10   waste it.  You can go into a place of anger and hatred
11:00:12 11   and come out very dangerous.  Or not.  Right?
11:00:17 12           The person who these letters is about, who
11:00:20 13   has the support of the people sitting behind you, be the
11:00:26 14   person the people who love you saw and want you to be.
11:00:31 15   Right?  Only you can decide that you can either be
11:00:39 16   prepared to fight.  You don't have to turn the other
11:00:42 17   cheek, but you don't have to go out and start it either.
11:00:46 18   And so being ready to come out so that you can take care
11:00:49 19   of you and yours and do all of the things that are
11:00:56 20   creditable desires, that's still within your
11:00:59 21   contemplation at the end of this sentence.  You can come
11:01:02 22   out and you can live a long and happy and productive
11:01:05 23   life and put this in your past.  I urge you to do that.
11:01:10 24           But I'm not treating you as somebody that we
11:01:14 25   need to protect the public from by increasing this

11:01:16 1   sentence. I'm treating you as a man who is going to

11:01:19 2   come to an honorable place at the far end of this.

11:01:23 3         I recognize the need to provide the

11:01:26 4   defendant with needed correctional or -- sorry, with

11:01:27 5   needed educational or vocational training, medical care,

11:01:29 6   or other correctional treatment in the most effective

11:01:31 7   manner. I accepted the criminal history 1 instead of 6,

11:01:35 8   both as contemplated by the parties but because I

11:01:38 9   believe that furthers that goal under 3553 by making him

11:01:42 10   eligible for many things he might otherwise become

11:01:46 11   ineligible for under B.O.P. policy.

11:01:48 12         Finally, I recognize the need to avoid

11:01:50 13   unwarranted sentence disparities amongst defendants with

11:01:53 14   similar records who have been found guilty of similar

11:01:55 15   conduct. There will be other sentences to come in this

11:02:00 16   case. The Court recognizes that different individuals

11:02:06 17   stand in different places both within the organization,

11:02:10 18   within the criminal conduct itself, and with regard to

11:02:15 19   their participation post-arrest.

11:02:20 20         All right. You may stand, sir. I'm going

11:02:22 21   to formally pronounce your sentence.

11:02:28 22         Except as heretofore stated, the Court finds

11:02:31 23   the bases for the findings contained in the presentence

11:02:33 24   report credible and reliable and therefore the Court

11:02:35 25   adopts those findings. Based on those findings, the

| | | |
|---|---|---|
| 11:02:38 | 1 | Court has calculated the imprisonment range prescribed |
| 11:02:41 | 2 | by the advisory sentencing guidelines.  The Court has |
| 11:02:43 | 3 | considered that range as well as other relevant factors |
| 11:02:45 | 4 | set forth in the advisory sentencing guidelines and |
| 11:02:47 | 5 | those set forth in Title 18, United States Code |
| 11:02:50 | 6 | Section 3553(a). |
| 11:02:52 | 7 | Further, the Court adopts and imposes the |
| 11:02:54 | 8 | applicable special conditions of supervision referenced |
| 11:02:56 | 9 | in the presentence report.  Pursuant to the Sentencing |
| 11:03:00 | 10 | Reform Act of 1984 and in accordance with the Supreme |
| 11:03:03 | 11 | Court's decision in the *United States versus Booker*, it |
| 11:03:06 | 12 | is the judgment of this Court that the defendant, Liam |
| 11:03:08 | 13 | Montgomery Collins, is committed to the custody of the |
| 11:03:11 | 14 | Bureau of Prisons to be imprisoned for a term of 120 |
| 11:03:14 | 15 | months.  The Court recommends that the defendant receive |
| 11:03:21 | 16 | a full mental and physical health evaluation and any |
| 11:03:24 | 17 | necessary treatment, that he have access to any and all |
| 11:03:27 | 18 | educational or vocational training for which he is |
| 11:03:29 | 19 | eligible and for which he is interested. |
| 11:03:30 | 20 | Mr. Abrams, we didn't discuss a facility. |
| 11:03:33 | 21 | Is there a request? |
| 11:03:35 | 22 | MR. ABRAMS:  Your Honor, our request is a |
| 11:03:37 | 23 | facility in the northeast, given where his family is. |
| 11:03:41 | 24 | We understand the need to separate folks.  So just that |
| 11:03:43 | 25 | general region.  And then I do have one other request. |

| | | |
|---|---|---|
| 11:03:46 | 1 | THE COURT: Okay. So we'll make -- a |
| 11:03:48 | 2 | facility closest to family support? |
| 11:03:50 | 3 | MR. ABRAMS: Yes, Your Honor. |
| 11:03:51 | 4 | THE COURT: We'll make a request that the |
| 11:03:53 | 5 | defendant be placed at a facility in the northeast |
| 11:03:56 | 6 | closest to his family support. |
| 11:03:59 | 7 | What was your other request? |
| 11:04:00 | 8 | MR. ABRAMS: Your Honor, the presentence |
| 11:04:04 | 9 | report at paragraph 30 noted -- notes that Mr. Collins |
| 11:04:10 | 10 | had a drug possession charge. We didn't further talk |
| 11:04:16 | 11 | about that in the presentence interview. But he had |
| 11:04:21 | 12 | some involvement with drugs and alcohol, and so we would |
| 11:04:24 | 13 | ask you to order some treatment. |
| 11:04:25 | 14 | THE COURT: All right. I'll recommend he be |
| 11:04:27 | 15 | placed in the most intensive drug abuse program |
| 11:04:30 | 16 | available at the facility which he is assigned. The way |
| 11:04:35 | 17 | this presentence report ultimately comes out, he may be |
| 11:04:38 | 18 | eligible for the residential drug abuse treatment |
| 11:04:41 | 19 | program. I'm not certain. But the most intensive |
| 11:04:43 | 20 | program available. |
| 11:04:43 | 21 | MR. ABRAMS: Thank you, Your Honor. |
| 11:04:46 | 22 | THE COURT: Mr. Collins, that does two |
| 11:04:48 | 23 | things. It can help you with any actual problem you do |
| 11:04:52 | 24 | have and it can also, if you fully participate, perhaps |
| 11:04:55 | 25 | shorten your sentence. |

11:05:03  1        Pursuant to the plea agreement, Counts 1, 3,

11:05:05  2   and 5 are dismissed.  Upon release from imprisonment,

11:05:08  3   the defendant shall be placed on supervised release for

11:05:11  4   a term of three years.

11:05:13  5        Further, after careful consideration of the

11:05:14  6   provisions of Title 18, United States Code

11:05:17  7   Section 3583(d), the sentencing factors outlined in

11:05:19  8   Title 18, United States Code Section 3553(a) and the

11:05:23  9   conditions now imposed, the Court orders that the

11:05:26  10  defendant shall comply with the mandatory and standard

11:05:29  11  conditions of supervision adopted in the Eastern

11:05:33  12  District of North Carolina as referenced in the Standing

11:05:34  13  Order.

11:05:35  14       The defendant shall also comply with the

11:05:37  15  following special conditions:  The defendant shall

11:05:40  16  participate as directed in a program approved by the

11:05:43  17  probation office for the treatment of narcotic

11:05:45  18  addiction, drug dependency, or alcohol dependency, which

11:05:47  19  will include urinalysis testing or other drug detection

11:05:50  20  measures and may require residential or participation in

11:05:53  21  a residential treatment facility.  This is based on the

11:05:56  22  defendant's history of substance abuse.  The defendant

11:05:58  23  shall participate in such vocational training programs

11:06:00  24  as may be directed by the probation office.

11:06:03  25       The defendant shall submit to a search at

11:06:05   1   any time with or without a warrant and by any law

11:06:08   2   enforcement or probation officer of the defendant's

11:06:10   3   person and any property, house, residence, vehicle,

11:06:14   4   papers, computer, other electronic communication or data

11:06:17   5   storage devices or media and effects upon reasonable

11:06:21   6   suspicion concerning a violation of a condition of

11:06:23   7   supervised release or unlawful conduct by the defendant,

11:06:26   8   or to a search by any probation officer in the lawful

11:06:28   9   discharge of the officer's supervision functions.

11:06:31  10        The Court notes that Fourth Circuit

11:06:33  11   precedence may require a probation officer to have some

11:06:35  12   particularized suspicion to render certain searches

11:06:38  13   lawful.  The Court imposes lawful searches.  The Court

11:06:42  14   finds that a search condition reasonably related to the

11:06:44  15   nature and circumstances of the offense, the history and

11:06:46  16   characteristics of the defendant, and the need to

11:06:49  17   protect the public from future crimes of the defendant.

11:06:51  18   The Court particularly notes that significant portions

11:06:54  19   of the relevant conduct in this place took place via

11:06:57  20   electronic messaging, electronic communication, and

11:06:59  21   online forums, and so the computer search term is fully

11:07:02  22   warranted by the facts and circumstances of this case.

11:07:08  23        It is further ordered the defendant shall

11:07:10  24   cooperate in the collection of DNA as directed by the

11:07:13  25   probation officer.  It's further ordered the defendant

shall pay the United States a special assessment of $100, which shall be due immediately. Although provisions of the Victim and Witness Protection Act are applicable, as there was no identifiable loss associated with this offense, restitution is waived. Pursuant to the stipulations in the plea agreement, no fine is being imposed.

Liam Montgomery Collins, you can appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary, or if there's some other fundamental defect in the proceedings that was not waived by your guilty plea. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think your sentence is contrary to law. However, a defendant may waive those rights as part of a plea agreement. And you've entered into a plea agreement, which waives some or all of your rights to appeal the sentence itself. Such waivers are generally enforceable. If you believe the waiver is unenforceable, you can present that theory to the appellate court. With few exceptions, any notice of appeal must be filed within 14 days of judgment being entered on the docket in your case. If you're unable to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*. And if you so request, the

11:08:18  1   clerk of the court will prepare and file a notice of

11:08:20  2   appeal on your behalf.

11:08:23  3          The Court also announces that if it's

11:08:26  4   miscalculated the advisory guideline range in any way or

11:08:28  5   erroneously departed or failed to depart in any way,

11:08:32  6   that the Court would impose the same sentence as an

11:08:34  7   alternative variant sentence in light of all the

11:08:37  8   Section 3553(a) factors that I have discussed.  This is

11:08:39  9   a sentence sufficient but not greater than necessary in

11:08:41  10  this case.  The Court particularly notes that I have

11:08:45  11  both departed and, in the alternative, varied in this

11:08:49  12  case to come to the Criminal History Category of 1 and

11:08:54  13  the guidelines range of 37.  A 37/I far exceeds the kind

11:09:04  14  of statutory sentence imposed in this case, and the

11:09:07  15  Court finds that the 120-month statutory maximum is well

11:09:11  16  below the guideline range and appropriate.

11:09:14  17          Anything further, Mr. Abrams?

11:09:16  18          MR. ABRAMS:  No, Your Honor.  Thank you.

11:09:17  19          THE COURT:  Ms. Kocher?

11:09:18  20          MS. KOCHER:  No, sir.

11:09:21  21          THE COURT:  Mr. Collins, with good time, I

11:09:25  22  may still be on the bench when you are released.  I hope

11:09:28  23  so.  Respectfully, I hope we don't see each other again,

11:09:32  24  and that all I hear are reports that you're doing so

11:09:35  25  well they want your supervision terminated early so you

| | |
|---|---|
| 11:09:38 | 1 |
| 11:09:41 | 2 |
| 11:09:42 | 3 |
| 11:09:43 | 4 |
| 11:09:45 | 5 |
| 11:09:55 | 6 |

1  can go on with your life and be successful.  I wish that

2  for you.

3          THE DEFENDANT:  Thank you.

4          THE COURT:  The defendant is remanded to the

5  custody of the United States Marshal.

6          (The proceedings concluded at 11:09 a.m.)

7                    * * * * *

8

9              **C E R T I F I C A T E**

10

11      I certify that the foregoing is a correct

12  transcript from the record of proceedings in the

13  above-entitled matter.

14          This the 22nd day of August, 2024.

15

16

17  Jennifer C. Carroll, RMR, CRR
    Official Court Reporter

18

19

20

21

22

23

24

25